The cause came to a hearing, and Chancellor Rutledge delivered the following decree of the court:
This suit is brought bv the creditors of R. C. for the . . . . - . , „ , purpose of setting aside conveyances from said K. C. to defendant’s father, of a lot of laird, on the principle that it was not made bona fide, and for a good or valuable consideration, but with an intention to defraud his creditors.— The defendant by his answer denies any knowledge of the transaction; says he believes the conveyance was made bona fide for a valuable consideration of 350/. paid down; and that a bond was given to R. C. for 600/. balance of the purchase money : that there are receipts for money paid on the bond, and that it is in his possession cancelled. If the case had rested altogether on defendant’s answer, it. had all the appearances of a fair transaction ; but when the evidence which has been adduced is critically examined *306 and weighed, a question arises whether the whole business was not a contrivance to secure the property from R. C’s. cre<jitor‘g, for his or his family’s benefit. In order to make the conveyance a valid one against creditors, according to .the statute,- there are two requisites absolutely necessary, viz: It must be made upon good consideration, and bona fide. It is admitted if it be made bona fide, and for a va-. luable consideration, it will be good. . Whether this sale w as bona fide, must be collected principally from the circumstantial evidence, which is almost as strong as positive proof. That it was not bona fide, is evident; for although he is said to have purchased in November, 1791, and- recorded his conveyance immediately, he never returned the property as his, till December, 1795, four years after, and then not on oath; and the returns are in the handwriting: of other persons, although he makes regular annual returns;, in his own hand writing and on oath, of all the property he possessed previous to that day. In October, 1795, this lot is returned by J. W. C. for J. W< In 1796, no' return ■ is made of it. In 1797, it is returned again by J. W< C. for J. W. who was then dead. J. W. C. in his examina-, iion swears, that the tax returns were wrote by him at J. W’s. réquest; that J. W. paid some of the taxes, but that other parts were paid by him out of the rents, by J. W’s* desire. Further, it-appeared that the property was mortgaged by R. C. to the public for paper medium; that J,. W. never paid the debt or interest, and that the interest has. been paid either by R. C’s. widow, or his representatives* Another strong circumstance of the conveyance not being, bona fide is, that although the purchase is said to be for a valuable consideration, and the wife of R. C. joined in the conveyance, she did not renounce her dower j and four years afterwards, (three years after his death) in J. W’S/ life time, she.applied for her dower, and the greatest part of the land was sold to satisfy her claim.
It was nofproved that J. W. was either a weak or an, ignorant man; and it is presumable from his possessing a considerable real estate, that he knew it. was necessary for *307 her to renounce her dower, to bar her of it. Yet that is not done, and she recovered at the end of four years, after signing the deed, 748/. for dower in lands, which had b,een sold for 950/. All these circumstances collectively taken, are a strong and convincing proof to the court that the transaction was not bona fide : that it was for what the law calls a good consideration, is not pretended} box it is alleged that it was for a valuable consideration : although the answer states that 35.04 of the purchase money was paid down, there is no proof of it. The testimony of M. who was examined on interrogatories^ and is a subscribing witness to the deeds, fully dev.elopes the whole transaction ; and though his character is a bad pne, he may possibly relate the truth. We shall, however, only make .use of his testimony, as it regards that part of Mrs. C’s. respecting the payment of the purchase money, wherein she says, that though money was placed on a table, some in gold, some in dollars, and another part in paper medium, the latter only was brought by J. W.; the gold and silver was put down by Mrs. C. and by her afterwards remov? ed, and J. W. put up his paper money again. The money was produced purposely to deceive the other witnesses to the deed, and R. C. did not actually receive a shilling.— This part of his testimony, as it relates to the money, is in part confirmed by Mrs. C. who was examined for defendant, and swears that a quantity of dollars were placed on a table in the room where she was sitting; (then a girl about 13 years old') to what amount in value she knows not j by whom put there, she could not tell; and after the deeds were signed, the money was taken away, but by whom, she was also ignorant: nor did she know whether there was any gold or paper medium : she thinks she saw the bag that contained the dollars afterwards in her mother’s trunk. This witness swears with great caution, and very properly, for she was then young, and probably did not take much notice of what was going on ; but it is somewhat remarkable that though she was in the room the whole time, she cannot recollect by whom the money was *308 brought in or removed, though it must have taken up some time to place the money in the order she described it, and noise which the removal of so large a sum must have occasioned, one would naturally imagine, could not but have attracted her attention. Upon this part of the case, respecting the payment of the money, the proof is strongly against the payment. Nor do we think the case is made better b.y the receipts on the bond, for it is evident there was no money paid by J. W. for the first receipt, because it expressly states, to be received by the rents of the house which Mrs. C. was then in possession of, and had lived in from the time of making the conveyance : and the second receipt for 2001. is in full of the bond. It must be observ-: ed that the bond was for 600/. bore interest from .the date, and no time was limited for the payment. It was not paid till November, 1795, four years after the date, at which time no more than 600/. is pretended to have been paid, which was the principal debt, and not a farthing of interest. From all these circumstances, it is manifest that a valuable consideration was not paid for this property by defendant’s testator. Upon full consideration of the testimony, and the very singular circumstances of this case, the court are of opinion, that the transaction was not bona fide, and for a valuable consideration, but merely fictitious, and made solely with a view to protect the property from R. C’s creditors. It is therefore ordered and decreed, that the conveyance from R, C. to J. W. be set aside and can-celled.